# IN THE SUPREME COURT, STATE OF WYOMING

**2022 WY 134A**

*October Term, A.D. 2022*

*October 27, 2022*

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING
STATE BAR,

Petitioner,

v.

CODY M. JERABEK, WSB #7-5758,

Respondent.

D-22-0003,
D-22-0004

## ORDER OF THREE-YEAR SUSPENSION *NUNC PRO TUNC*

[¶1]     **This matter** came before the Court upon the Board of Professional Responsibility's Report and Recommendation for Three-Year Suspension (in D-22-0003) and a Report and Recommendation for 18-Month Suspension (in D-22-0004), both filed herein October 11, 2022.  The Reports and Recommendations were filed pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure, which governs stipulated discipline.  Now, after a careful review of the Reports and Recommendations and the files, the Court finds the Reports and Recommendations should be approved, confirmed, and adopted by the Court, and that Cody M. Jerabek should be suspended from the practice of law for three years.  This order is being amended to change the effective date of the suspension to December 15, 2022, as requested in a Stipulated Motion to Defer Suspension Date.  The order published October 26, 2022, in *Board of Professional Responsibility v. Jerabek*, 2022 WY 134 (Wyo. 2022) shall have no further force or effect. It is, therefore,

[¶2]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for Three-Year Suspension, which is attached hereto and incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶3]     **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for Three-Year Suspension, Respondent Cody M. Jerabek shall be, and hereby is, suspended from the practice of law for three years, with the period of suspension to begin December 15, 2022; and it is further

[¶4]     **ADJUDGED AND ORDERED** that the Board of Professional Responsibility's Report and Recommendation for 18-Month Suspension, which is attached hereto and

incorporated herein, shall be, and the same hereby is, approved, confirmed, and adopted by this Court; and it is further

[¶5]  **ADJUDGED AND ORDERED** that, as a result of the conduct set forth in the Report and Recommendation for 18-Month Suspension, Respondent Cody M. Jerabek shall be, and hereby is, suspended from the practice of law for eighteen months, with the period of suspension to begin December 15, 2022, and be served concurrently with the three-year suspension imposed above; and it is further

[¶6]  **ORDERED** that, during the periods of suspension, Respondent shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure, particularly the requirements found in Rule 21 of those rules.  That rule governs the duties of disbarred and suspended attorneys; and it is further

[¶7]  **ORDERED** that, pursuant to Rule 25 of the Wyoming Rules of Disciplinary Procedure, Respondent shall reimburse the Wyoming State Bar the amount of $100.00, which represents the costs incurred in handling these matters, as well as pay an administrative fee of $750.00 in each case.  Respondent shall pay the total amount of $1,600.00 to the Wyoming State Bar on or before December 30, 2022.  If Respondent fails to make payment in the time allotted, execution may issue on the award; and it is further

[¶8]  **ORDERED** that the Wyoming State Bar may issue the agreed press releases contained in the Report and Recommendation for Three-Year Suspension and the Report and Recommendation for 18-Month Suspension; and it is further

[¶9]  **ORDERED** that the Clerk of this Court shall docket this Order of Three-Year Suspension *Nunc Pro Tunc*, along with the incorporated Report and Recommendation for Three-Year Suspension and the Report and Recommendation for 18-Month Suspension as matters coming regularly before this Court as public record; and it is further

[¶10]  **ORDERED** that, pursuant to Rule 9(b) of the Wyoming Rules of Disciplinary Procedure, this Order of Three-Year Suspension *Nunc Pro Tunc*, along with the incorporated Report and Recommendation for Three-Year Suspension and the Report and Recommendation for 18-Month Suspension shall be published in the Wyoming Reporter and the Pacific Reporter; and it is further

[¶11]  **ORDERED** that the Clerk of this Court cause a copy of this Order of Three-Year Suspension *Nunc Pro Tunc* to be served upon Respondent Cody M. Jerabek.

[¶12]  **DATED** this 27th day of October, 2022.

BY THE COURT:

/s/

**KATE M. FOX**
**Chief Justice**

IN THE SUPREME COURT
STATE OF WYOMING
FILED

OCT 11 2022

*[signature]*

SHAWNA GOETZ, CLERK

BEFORE THE SUPREME COURT

STATE OF WYOMING

*In the matter of*               )
*CODY M. JERABEK,*        )
*WSB # 7-5758,*            )
                                 )
      *Respondent.*            )

# D-22-0003

*WSB No. 2021-078*

## REPORT AND RECOMMENDATION FOR THREE-YEAR SUSPENSION

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via video conference call on the 26ᵗʰ day of September, 2022, for consideration of the parties' Stipulation for Three-Year Suspension pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present on the call were Review Panel members John A Masterson, Katherine A. Strike and Janine Thompson. Mark W. Gifford, Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Cody M. Jerabek appeared on his own behalf. The Review Panel, having reviewed the Stipulation, the supporting Affidavit and being fully advised in the premises, finds, concludes and recommends:

### Findings

1.      Respondent has been licensed to practice law in Wyoming since 2016 and maintains an active practice of law in Cheyenne, Wyoming.

2.      This matter arises from a litigation matter in which Respondent represented an insured defendant in 2021. A detailed statement of the factual basis for this stipulation is contained in Respondent's Confidential Affidavit of Conditional Admission.

3.      On July 1, 2020, Respondent purchased a one-third partnership interest in the law firm of McKellar, Tiedeken and Scoggin, LLC ("MTS"). At the time Respondent joined the firm, other lawyers at the firm were Sean Scoggin and Brian Hunter.

4. At the time Respondent started practicing at MTS, Mr. Hunter was representing The Rusty Parrot Lodge and Spa, LLC ("Rusty Parrot") with respect to a claim by The Body Sage, Inc. ("Body Sage") and Acuity, Body Sage's insurer, arising from a November 18, 2019, fire which destroyed Rusty Parrot and caused smoke damage and business interruption to Body Sage, which operated a spa next door to Rusty Parrot. Zurich, Rusty Parrot's insurer, sent the claim to Brian Hunter in June 2020.

5. On August 5, 2020, Body Sage and Acuity sued Rusty Parrot in the Ninth Judicial District Court, Teton County, Wyoming, Civil Action No. 18275. The complaint asserted theories of negligence, gross negligence and breach of contract by Rusty Parrot. There was also a request for declaratory judgment with respect to the lease arrangement between Rusty Parrot and Body Sage. After Mr. Hunter filed an answer on behalf of Rusty Parrot, a scheduling conference was held in the case on November 3, 2020. The ensuing Scheduling and Case Management Order established the following dates and deadlines:

- Plaintiff's designation of expert witnesses – March 8, 2021
- Defendant's designation of expert witnesses – April 9, 2021
- Discovery cut-off – May 7, 2021
- Dispositive motions filing deadline – May 21, 2021
- Deadline to respond to dispositive motions – June 11, 2021
- Each side to file list of witnesses and exhibits – June 17, 2021
- Pretrial conference – July 1, 2021

6. On November 20, 2020, Mr. Hunter gave notice that he was withdrawing from MTS effective February 20, 2021. On December 8, 2020, Respondent filed an entry of appearance and request for substitution of counsel in the Rusty Parrot litigation. However, Respondent did not submit a proposed order.

2

7.      On January 5, 2021, Mr. Scoggin filed an entry of appearance and request for substitution of counsel in the Rusty Parrot case along with a proposed order. Judge Day signed Mr. Scoggin's proposed order on February 4, 2021.

8.      On January 19, 2021, Respondent signed Rusty Parrot's Rule 26 initial disclosures. An MTS paralegal emailed the disclosures to Kyle Ridgeway, then of Williams, Porter, Day and Neville, counsel for the plaintiffs in the Rusty Parrot litigation.

9.      The Zurich claim file relating to the Rusty Parrot lawsuit includes the following entry dated February 12, 2021: "... it's time to get some discovery done. Cody [Jerabek] will send written discovery, request past tax returns, and then we will hire a forensic accountant to push back on both lost income claims (Acuity subro. and spa owner)." Respondent failed to serve any written discovery in the case.

10.     On March 8, 2021, the plaintiffs timely filed their expert designation naming a forensic accountant who would purportedly opine that Body Sage's estimated income loss was $229,919. The April 9, 2021, deadline for Rusty Parrot to designate its expert witnesses passed with nothing being filed. Similarly, the May 7, 2021, discovery cut-off passed with no discovery being undertaken on behalf of Rusty Parrot. Respondent failed to inform his client and Zurich of these developments.

11.     In an affidavit dated September 2, 2021, Brandon Harrison, Rusty Parrot's manager, testified, "On or about April 12, 2021, I was notified by Attorney Cody Jerabek that he had taken over my company's representation from Attorney Brian Hunter. . . We held a conference call on that same day where I was advised of a July pretrial conference. This was my last communication with him."

12.     On April 19, 2021, Mr. Harrison sent Respondent the following email:

3

Hi Cody,

Thanks for your time on the phone last week. If you haven't already, I would appreciate it if you would follow up with Zurich to keep the process moving through their committees.

Respondent did not respond.

13. On April 30, 2021, Mr. Harrison sent another email:

Hi Cody,

When we spoke on the 13th you mentioned that a request for authority had been with Zurich for 2 weeks and that 3½ weeks was the longest you had experienced that process taking. It's been another 2½ weeks since then, any update?

Respondent did not respond.

14. The Zurich claim file contains the following note from claims adjuster Debbie Anderson dated May 6, 2021: "Cody (DC)[1] called me today and advised me that Acuity and the sister's attorney have decided that if we offer $300,000 total they will decide how to divide up the funds between them and the case will not go to litigation and it can be final."

15. That conversation prompted Ms. Anderson to pull her supervisor, Dan Gallagher, into the discussion. Zurich's claim file contains the following note from Mr. Gallagher dated May 10, 2021:

CP [claims professional; in this case, Debbie Anderson], DC [defense counsel] an [sic] I discussed this claim. Discussion started with me pointing out to DC that we have never offered $300k, nor would we. He said the $300k figure was his mistake, he was thinking that was the limit of business income coverage on the Body Sage policy. It's not, the lost income cap is $200k and Acuity paid that. Cody did have accountant review ... Cody did say the accountant found about $60-$70k in lost income in excess of the $200k paid by Acuity. So per our accountant, gross lost income that she thinks can be supported is $260-$270k. That said, we can still argue that the lease provisions bar recovery in income, but that argument likely not going to prevail. ... Note accountant did not prepare a written

---

[1] Defense counsel.

4

report, as that would be discoverable. DC did say that he thinks we can settle this lost income claim globally for $200k or under. I agree we should do so as we will not likely prevail on liability as the lost profits claim (we will prevail on the property damage subrogation of about $125k and Acuity has pretty much admitted that). Told Debbie to increase reserves to $200k and we would confer with AVP to discuss approving that authority.

Respondent's representations to Mr. Gallagher and Ms. Anderson that Respondent had obtained an estimate of Body Sage's lost profits from an accountant were untrue.

16. On May 20, 2021, Erica Day[2] sent Respondent an email with an offer to settle for $280,000. Ms. Day wrote, "If the offer is not accepted [by 3:00 p.m. the following day], Plaintiffs will file their motion for summary judgment and will request Judge Day order the parties to mediation." Respondent did not pass the offer on to Zurich or his client, nor did Respondent respond to Ms. Day's email.

17. On May 21, 2021, Ms. Day filed a motion for partial summary judgment. It was emailed to Mr. Scoggin by Ms. Day's legal assistant at 4:11 p.m. Mr. Scoggin forwarded the email and the motion to Respondent at 4:12 p.m. Ms. Day also forwarded the email and the motion to Respondent at 5:05 p.m. Respondent did not respond to either email, nor did he forward the motion to Zurich or to his client.

18. On May 23, 2021, Respondent sent Mr. Scoggin an email notifying him that Respondent was going to withdraw from MTS on July 1, 2021, to start his own firm.

19. On June 14, 2021, Respondent signed a Partnership Withdrawal Agreement which set forth the terms of Respondent's departure from MTS. The agreement provided, among other things, that Respondent was taking the Rusty Parrot case with him.

---

[2] Ms. Day had undertaken representation of the plaintiffs after Mr. Ridgeway's departure from Williams, Porter, Day & Neville.

20. On June 15, 2021, Respondent attended a scheduling call in the Rusty Parrot case. On the call were Ms. Day, counsel for the plaintiffs, and the Judicial Assistant for the Hon. Tim Day, the presiding judge on the case. The ensuing order signed by Judge Day stated:

> Counsel for the Defendant represented that he was currently waiting on a response from the adjuster with respect to setting the mediation and selecting the mediator. Counsel for the Defendant requested a thirty-day continuance for the scheduling conference.

Respondent's statement to Judge Day's Judicial Assistant was a misrepresentation, as Respondent had had no communication with Zurich regarding a prospective mediation. Judge Day granted Respondent's request for an extension and set a follow-up scheduling conference for July 15, 2021.

21. From June 15, 2021, to July 23, 2021, when Respondent next spoke with Zurich's adjuster, Ms. Anderson, Respondent largely neglected the case. There is a June 18, 2021, note in the Zurich claim file that "Cody not responding. Sent him another email after getting his voicemail." In Ms. Anderson's affidavit filed by Respondent's replacement counsel after Respondent was terminated by Zurich in early September, Ms. Anderson testified, "On May 17, 2021, I talked to Attorney Jerabek about this case and Plaintiff's claims. Between May 17, 2021, and July 23, 2021, I attempted to discuss this litigation with Attorney Jerabek without success (5/24; 5/26; 6/21; 6/23; 7/2; 7/8). In fact, he missed two conference calls for which his office had set for us to talk during this time period."

22. On June 23, 2021, Ms. Anderson sent Respondent an email stating, "Cody, I wanted to follow up with the VM that I left for you if you could please let me know by replying yes or no if you want to continue to handle the Body Sage claim. If you could please give me an answer today I would greatly appreciate it." Respondent responded, "Debbie, Of course I do. I'm sorry I never received your email. I've been in a 2 week jury trial that should end tomorrow. Can

6

we do a call Friday? Or can you email me what your voicemail said?" Ms. Anderson responded, "That would be great to talk on Friday [June 25, 2021] I'm in the office until 4:00 PM Central." Respondent did not respond to the email, nor did Respondent call Ms. Anderson. Respondent's representation to Ms. Anderson that Respondent had been in a two-week jury trial was untrue.

23. The deadline for Respondent to respond to the plaintiffs' motion for partial summary judgment long past, on June 28, 2021, Ms. Day filed a motion for entry of partial judgment. Respondent did not inform Zurich or Respondent's client of the motion.

24. On June 30, 2021, Zurich claims manager Dan Gallagher emailed Respondent about the Rusty Parrot case, writing, "Cody, could you give me a call on this one?" Respondent did not respond. On July 1, 2021, Mr. Gallagher emailed again. "Cody: Insured requesting an update. Could you call Debbie or me on this?" Respondent did not respond.

25. On July 2, 2021, Ms. Anderson noted in the claim file, "Cody did not call at the scheduled time I called and spoke with Emily and he was in a meeting. We have a call scheduled for Tuesday [7/6/2021] at 10:00 AM and 12:00 PM Central to discuss the case and to confirm his rates." On July 8, 2021, Ms. Anderson noted, "Called and left a message with Emily that I had to speak with Cody today he has missed the last two scheduled conference calls."

On July 14, 2021, Ms. Day sent the following email:

I'm checking in on the Body Sage v. Rusty Parrot Lodge. I haven't heard back from you regarding using Honaker as a mediator, nor potential dates. Have you confirmed your client's willingness to mediate with Honaker? If not, is there someone you would rather use?

Finally, to-date you have not served a response to the Body Sage's Motion for Partial Summary Judgment or Motion for Entry of Partial Judgment.

Respondent did not respond.

26. The following day, Ms. Day wrote:

7

Cody,

> We were set for a Scheduling Conference this morning with Judge Day on the Body Sage v. Rusty Parrot Lodge case. I tried your cell phone, but there was no answer and the messages are disabled.
>
> Judge Day is going to set a telephonic status conference for next Thursday [July 22, 2021] at 10:30 – the order will go out today. Please let me know if you want to discuss other mediators besides Honaker.
>
> Additionally, you have not responded to either the Motion for Partial Summary Judgment or Motion for Entry of Partial Judgment. You can get me at 307-995-8023 to discuss.

Respondent did not respond.

27. When Ms. Day sent the above emails, there were still a few days left for Respondent to file a response to the plaintiffs' June 28, 2021, motion for entry of partial judgment. Respondent filed nothing.

28. On July 22, 2021, another telephone status conference was held with Ms. Day and Respondent in attendance. The ensuing order stated:

> The parties provided a status update regarding mediation. Counsel for Defendant confirmed that his client and the insurance carrier consented to conducting a mediation with Dick Honaker. Counsel for the parties agreed to confer with Mr. Honaker regarding his availability to schedule a mediation. The parties represented that they should have that accomplished by early next week. The Court will reset the telephone scheduling conference to set the remaining pretrial deadlines in this matter. Counsel shall be prepared to provide the Court with the date that the parties have scheduled a mediation at the telephone scheduling conference.

A follow-up scheduling conference was set for July 28, 2021.

29. At the time of the July 22, 2021, telephone status conference, Respondent had not communicated with either his client or Zurich regarding Ms. Day's efforts to schedule a mediation with Mr. Honaker as the mediator. Respondent's representations to the court regarding Respondent's communications with Respondent's client and Zurich were untrue.

8

30. In her affidavit filed by Respondent's replacement counsel after Respondent was terminated by Zurich, Ms. Anderson testified:

> On July 23, 2021, I talked to Attorney Jerabek wherein he represented that a status conference had occurred on or about July 22 and that he had requested a mediation. He did not mention that Plaintiff had filed any motions. He otherwise advised he would be out on PTO until August 10, 2021. There was no further contact with attorney Jerabek until the mediation on August 23, 2021.

Respondent's representation to Ms. Anderson that the mediation was Respondent's idea was untrue.

31. On July 28, 2021, a telephone scheduling conference was held with Ms. Day and Respondent in attendance. The ensuing order required the parties to conduct a mediation on or before October 1, 2021. The mediation was subsequently scheduled for August 23, 2021, with Mr. Honaker serving as mediator.

32. On August 19, 2021, Respondent submitted a two-page mediation statement to Mr. Honaker. The mediation statement informed Mr. Honaker, under the heading "Pending Motions," "Plaintiff has filed a Motion for Partial Summary Judgment on May 21, 2021. There has not been a hearing on the Motion."

33. A copy of the mediation statement was sent to Ms. Anderson. In her subsequently-filed affidavit, Ms. Anderson testified, "At no time prior to August 19, 2021, did Attorney Jerabek notify Zurich of Plaintiff's May 21st, 2021, Motion for Partial Summary Judgement . . . [The mediation statement contained] no discussion of the basis of the motion, a suggestion that a timely response was not filed, or that other motions were pending. Zurich was emailed a copy of that letter on or about the same day." Respondent acknowledges that these were misrepresentations by omission on Respondent's part.

9

34.　On August 31, 2021, Mr. Harrison submitted a complaint about Respondent to the Office of Bar Counsel. Zurich terminated Respondent's representation of Rusty Parrot and engaged Christopher Reeves of Denver to take over the case. On September 2, 2021, Respondent filed a motion for leave to withdraw from the case. Mr. Reeves filed an emergency motion to stay a ruling on the plaintiffs' motion for entry of partial judgment and requested that briefing on the motion be re-opened. Mr. Reeves' motion was supported by affidavits from Mr. Harrison, Ms. Anderson and Mr. Gallagher.

35.　After Respondent was terminated by Zurich, settlement negotiations resumed and a full and final settlement of all claims was reached. The court file reflects that the case was dismissed on December 27, 2021.

36.　Pursuant to Rule 12 of the Rules of Disciplinary Procedure, Respondent conditionally admits to, and the Review Panel finds that there is clear and convincing evidence of, the following violations of the Rules of Professional Conduct in Respondent's handling of the Rusty Parrot case:

　　a.　Rule 1.2. Scope of representation and allocation between client and lawyer. Rule 1.2(a) provides in relevant part, "Subject to paragraphs (c), (d), and (e), a lawyer shall abide by a client's decisions concerning the objectives of representation, and, as required by Rule 1.4, shall consult with the client as to the means by which they are to be pursued." Respondent violated Rule 1.2(a) by failing to consult with his client regarding the plaintiffs' motions to which Respondent did not file timely responses and by failing to convey the $280,000 settlement offer made by Ms. Day.

　　b.　Rule 1.3. Diligence. Rule 1.3 provides, "A lawyer shall act with reasonable diligence and promptness in representing a client." Respondent violated Rule 1.3 in numerous respects,

10

including Respondent's failure to respond to inquiries from his client, Zurich and opposing counsel; failure to conduct any discovery; and failure to respond to the plaintiffs' motions.

c. <u>Rule 1.4. Communication.</u> Rule 1.4 requires Respondent to:

> (1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in 1.0(f), is required by these Rules;
> (2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;
> (3) keep the client reasonably informed about the status of the matter; [and]
> (4) promptly comply with reasonable requests for information.

Respondent violated this rule by failing to communicate with his client regarding the case.

d. <u>Rule 3.3. Candor toward the tribunal.</u> Rule 3.3(a) provides in relevant part, "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer ..." Respondent violated this rule by misrepresenting his communications with his client and Zurich during the status conferences held June 15, 2021, and July 22, 2021.

e. <u>Rule 4.1. Truthfulness in statements to others.</u> Rule 4.1 provides in relevant part, "In the course of representing a client a lawyer shall not knowingly: (1) make a false statement of material fact or law to a third person ..." As is noted in the comments to Rule 4.1, "Misrepresentations can also occur by partially true but misleading statements or omissions that are the equivalent of affirmative false statements." *See* comment [1]. Respondent violated this rule in numerous communications with Zurich as set forth above.

f. <u>Rule 8.4. Misconduct.</u> Rule 8.4(c) provides, "It is professional misconduct for a lawyer to ... engage in conduct involving dishonest, fraud, deceit and misrepresentation." As set forth above, Respondent committed numerous violations of this rule throughout the case.

11

37.     In addition, Respondent conditionally admits that his conduct as set forth above was, at all times and in all respects, made with knowledge that goes beyond mere negligence. Respondent conditionally admits that his conduct adversely reflects on Respondent's fitness to practice law.

38.     Respondent has agreed to a three-year suspension for his conduct.

Determination of the Appropriate Sanction

39.     Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii) The actual or potential injury caused by the lawyer's misconduct; and

(iv) The existence of any aggravating or mitigating factors.

40.     The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:

(a)     the duty violated;

(b)     the lawyer's mental state;

(c)     the potential or actual injury caused by the lawyer's misconduct; and

12

(d)     the existence of aggravating or mitigating factors.

41.     The duty violated. The parties stipulate that Respondent's conduct violated several ABA Standards.

42.     Violations of Rules 1.2, 1.3 and 1.4 require application of ABA Standard 4.4, "Lack of Diligence." ABA Standard 4.4 sets forth the following guidelines:

4.41    Disbarment is generally appropriate when:
        (a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or
        (b) a lawyer knowingly fails to perform services for a client and cause serious or potentially serious injury to a client; or
        (c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

4.42    Suspension is generally appropriate when:
        (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or
        (b) a lawyer engages in a pattern of neglect with respect to client matters and causes injury or potential injury to a client.

4.43    Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes injury or potential injury to a client.

4.44    Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in representing a client, and causes little or no actual or potential injury to a client.

43.     In the Rusty Parrot case, Respondent knowingly failed to perform services for a client and caused serious or potentially serious injury to the client. Accordingly, the presumptive sanction for Respondent's violations of Rules 1.2, 1.3 and 1.4 is disbarment.

44.     Violations of Rule 3.3 require the application of ABA Standard 6.1, "False Statements, Fraud and Misrepresentation." ABA Standard 6.1 sets forth the following guidelines:

6.11    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially

13

serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.

6.12 Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

6.13 Reprimand [*i.e.*., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent either in determining whether the statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal system, or causes an adverse or potentially adverse effect on the legal proceeding.

6.14 Admonition [*i.e.*, "private reprimand" under 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether the submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no adverse or potentially adverse effect on the legal proceeding.

The presumptive sanction for Respondent's violations of Rule 3.3 is suspension.

45. Violations of Rules 4.1 and 8.4(c) require the application of ABA Standard 5.1,

"Failure to Maintain Personal Integrity." ABA Standard 5.1 sets forth the following guidelines:

5.11 Disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

5.12 Suspension is generally appropriate when a lawyer knowingly engages in criminal conduct which does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice.

5.13 Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer knowingly engages in any other conduct that involves dishonesty, fraud, deceit or misrepresentation and that adversely reflects on the lawyer's fitness to practice law.

14

5.14 Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in any other conduct that reflects adversely on the lawyer's fitness to practice law.

The presumptive sanction for Respondent's violations of Rules 4.1 and 8.4(c) is disbarment.

46. The Lawyer's Mental State. The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

47. The parties stipulate, and the Review Panel finds, that Respondent's misconduct as set forth above was, at all times and in all respects, committed with conscious awareness of the nature or attendant circumstances of Respondent's conduct both without the conscious objective or purpose to accomplish a particular result; i.e., with knowledge.

48. The Potential or Actual Injury Caused by the Lawyer's Misconduct. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

15

49. The parties stipulate, and the Review Panel finds, that Respondent's misconduct as set forth above had the potential to cause injury to the client and the legal system.

50. <u>Aggravating and Mitigating Factors.</u> ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1 *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.
9.2 *Aggravation*
9.21 *Definition.* Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22 *Factors which may be considered in aggravation.* Aggravating factors include:
(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature of conduct;
(h) vulnerability of the victim;
(i) substantial experience in the practice of law;
(j) indifference in making restitution; and
(k) illegal conduct, including that involving the use of controlled substances.
9.3 *Mitigation*
9.31 *Definition.* Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32 *Factors which may be considered in mitigation.* Mitigating factors include:
(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;

16

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

51. In Respondent's case, the parties agree, and the Review Panel so finds, that aggravating factors include: (1) a prior disciplinary offense (a 2019 private reprimand); (2) dishonest or selfish motive; (3) pattern of misconduct; (4) multiple offenses; and (5) vulnerability of the victim.

52. The parties agree, and the Review Panel so finds, that mitigating factors include Respondent's profession of remorse and acceptance of responsibility for his conduct.

53. The Review Panel finds it appropriate to give considerable weight to Respondent's sustained and effective course of treatment and recovery for his alcohol dependency as well as his PTSD as a mitigating factor weighing in favor of a lengthy suspension as opposed to disbarment as the appropriate discipline.

54. The parties stipulate, and the Review Panel so finds, in consideration of the foregoing factors, that a three-year suspension is the appropriate sanction for the conduct to which Respondent has conditionally admitted.

17

55.     Concurrently herewith, the parties submit a stipulation for an eighteen-month suspension in WSB No. 2021-046. The parties stipulate, and the Review Panel recommends, that in the event both stipulations are adopted by the Wyoming Supreme Court, the suspensions shall be served concurrently and not consecutively.

56.     If the Court adopts the Review Panel's recommendation and issues an order of suspension in accordance herewith, Bar Counsel and Respondent have agreed to the following press release:

> The Wyoming Supreme Court issued an order suspending Cheyenne attorney Cody M. Jerabek from the practice of law for three years, effective _____. The order of suspension stemmed from Jerabek's conduct in a litigation matter in which he represented a client who was been sued following a fire at the client's place of business that resulted in damage to an adjoining business. Jerabek failed to maintain communication with his client and with the client's insurer and missed several deadlines in the case, including deadlines to file responses to two critical motions. Jerabek misled the insurance company regarding case developments and failed to communicate settlement offers to the client and the insurer. Jerabek was eventually terminated and replacement counsel was hired, who shortly got the case settled. Jerabek admitted that he violated several rules of professional conduct, including rules requiring diligence, communication with the client, candor to the court and truthfulness in statements to others. Jerabek agreed to the three-year suspension, which was presented to a review panel of the Wyoming State Bar's Board of Professional Responsibility. In consideration of a number of aggravating and mitigating factors, including Jerabek's sustained and successful efforts at recovery from alcohol use disorder and other psychological problems, the review panel approved the stipulated, three-year suspension and submitted a report and recommendation to that effect to the Wyoming Supreme Court. In adopting the review panel's recommendation, the Court ordered Jerabek to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.

## RECOMMENDATION

In consideration of the foregoing findings and conclusions, the Review Panel recommends as follows:

1.     That Respondent be suspended for a period of three years for violations of Rules 1.2, 1.3, 1.4, 3.3, 4.1 and 8.4(c), W.R.Prof.Cond.

18

2.      That, upon issuance of the order of suspension, the foregoing press release may be issued.

3.      That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of such order.

Dated this ___ day of October, 2022.

John A. Masterson, Chair
Review Panel of the Board of Professional Responsibility
Wyoming State Bar

19

BEFORE THE SUPREME COURT

STATE OF WYOMING

| | | |
|---|---|---|
| *In the matter of* | ) | **D-22-0004** |
| *CODY M. JERABEK,* | ) | |
| *WSB # 7-5758,* | ) | *WSB No. 2021-046* |
| | ) | |
| *Respondent.* | ) | |

---

## REPORT AND RECOMMENDATION FOR 18-MONTH SUSPENSION

---

THIS MATTER came before a Review Panel of the Board of Professional Responsibility via video conference call on the 26th day of September, 2022, for consideration of the parties' Amended Stipulation for 18-Month Suspension pursuant to Rules 9 and 12 of the Wyoming Rules of Disciplinary Procedure. Present on the call were Review Panel members John A. Masterson, Katherine A. Strike and Janine Thompson. Mark W. Gifford, Bar Counsel, appeared on behalf of the Wyoming State Bar. Respondent Cody M. Jerabek appeared on his own behalf. The Review Panel, having reviewed the Stipulation, the supporting Affidavit and being fully advised in the premises, finds, concludes and recommends:

### Findings

1.      Respondent has been licensed to practice law in Wyoming since 2016 and maintains an active practice of law in Cheyenne, Wyoming.

2.      This matter arises from a sexual relationship between Respondent and a client. As further detailed in the accompanying Confidential Affidavit of Conditional Admission, the client submitted a complaint to the Office of Bar Counsel in late May 2021.

3.      Respondent undertook the client's representation in a criminal matter in 2020. At the time, Respondent was married. Respondent instructed the client that if she was ever questioned about their relationship, she should lie, pre-dating the relationship to college and claiming

that they had a sexual relationship before Respondent became her attorney, which was a falsehood.

4. Respondent successfully resolved the criminal charges against the client in her favor and also represented her in a civil matter. The sexual relationship continued during said representation and ultimately ended in March 2021. After the sexual relationship ended, the client asked Respondent to transfer her civil case to another lawyer. However, Respondent failed to do so.

5. In Respondent's written response to the complaint submitted by the client to the Office of Bar Counsel, Respondent expressed deep shame regarding his actions and horror at his ability to have behaved the way he did throughout the situation. Respondent admitted that he asked the client to tell others that Respondent and the client had pursued each other romantically during college. Respondent knew this was not true. Respondent was aware that it was unethical to engage in a sexual relationship with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced. Respondent admitted having violated Rule 1.8(j) by having commenced sexual relations with a client. Respondent further admitted that he violated Rule 1.16 because he did not terminate the representation after the sexual relationship commenced.

6. After Respondent's relationship with the client was terminated in March 2021, Respondent recognized that he had a serious substance use problem. Respondent contacted Jack Speight, Director of the Wyoming Lawyer Assistance Program (WyLAP), for guidance as to how Respondent could get help. With financial assistance from the WyLAP Foundation, Respondent commenced treatment and monitoring of his addiction.

2

7.     Respondent's first day of sobriety was May 25, 2021, two days before the client submitted her complaint to the Office of Bar Counsel. Respondent was diagnosed shortly thereafter with Alcohol Use Disorder – Severe; Post-Traumatic Stress Disorder (PTSD) - Childhood Onset; Depression and Anxiety. Respondent had already been aware of the depression and anxiety diagnosis.

8.     Respondent commenced intensive outpatient treatment for Alcohol Use Disorder. Respondent was also put on dual testing schedules with breathalyzer testing three times each day as well as random blood or urine testing for alcohol and drugs. Respondent has undergone such testing for more than one year and has never tested positive.

9.     Respondent has also engaged in a sustained and effective course of therapy for his PTSD and has regularly performed other tasks assigned to Respondent according to his treatment plan, such as finding an "alternative activity" to take the place of his habitual consumption of alcohol.

10.    At present, Respondent continues to attend weekly aftercare sessions for his Alcohol Use Disorder, weekly therapy sessions for his PTSD, and weekly AA meetings. Respondent has been open with others about his addiction and treatment and has made a CLE presentation to the State Public Defender Conference and for a group of therapists regarding stress, addiction and recovery.

11.    Pursuant to Rule 12 of the Wyoming Rules of Disciplinary Procedure, Respondent conditionally admits to, and the Review Panel so finds, clear and convincing evidence of Respondent's violations of Rule 1.7(a) (conflict of interest), Rule 1.8(j) (sex with client), Rule 1.16 (failure to withdraw from representation of client) of the Rules of Professional Conduct. More specifically, Respondent conditionally admits, and the Review Panel so finds, the following:

3

- Respondent violated Rule 1.7(a) by initiating and maintaining a sexual relationship with his client despite the obvious conflict between the interest of the client in the matters in which Respondent was her lawyer and Respondent's personal interest in having sex with his client.

- Respondent violated Rule 1.8(j) by engaging in a sexual relationship with his client when no consensual sexual relationship existed between them when the client-lawyer relationship commenced.

- Respondent violated Rule 1.16(a) by failing to withdraw from the client's representation promptly upon commencement of a sexual relationship between them.

12.     Respondent conditionally admits, and the Review Panel so finds that Respondent's conduct in violation of Rule 1.7(a) and 1.8(j) as set forth above was, at all times and in all respects, intentional and that it involved dishonesty and deceit that adversely reflects on Respondent's fitness to practice. The Review Panel finds that Respondent was negligent in violating Rule 1.16(a).

Determination of the Appropriate Sanction

13.     Rule 15(b)(3)(D), Wyo.R.Disc.Proc., provides, "In imposing a sanction after a finding of misconduct by the respondent, the BPR shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions:

(i)  Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;

(ii) Whether the lawyer acted intentionally, knowingly, or negligently;

(iii)The actual or potential injury caused by the lawyer's misconduct; and

(iv)The existence of any aggravating or mitigating factors.

4

14.     The American Bar Association's "Standards for Imposing Lawyer Discipline" (hereafter referred to as the "ABA Standards") state, "The purpose of lawyer discipline proceedings is to protect the public and the administration of justice from lawyers who have not discharged, will not discharge, or are unlikely properly to discharge their professional duties to clients, the public, the legal system, and the legal profession." ABA Standard 3.0 lists the factors to be considered in imposing a sanction after a finding of lawyer misconduct and mirrors the language of Rule 15(b)(3)(D), Wyo.R.Disc.Proc.:

(a)     the duty violated;

(b)     the lawyer's mental state;

(c)     the potential or actual injury caused by the lawyer's misconduct; and

(d)     the existence of aggravating or mitigating factors.

The duty violated. The parties stipulate that Respondent's conduct violated several ABA Standards.

Standard 4.3. The parties stipulate that Respondent's violations of Rules 1.7(a) (conflict of interest) and 1.8(j) (sex with client) implicate Standard 4.3, "Failure to Avoid Conflicts of Interest," which provides:

> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:
>
> 4.31    Disbarment is generally appropriate when a lawyer, without the informed consent of client(s):
>         (a) engages in representation of a client knowing that the lawyer's interests are adverse to the client's with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to the client; or
>         (b) simultaneously represents clients that the lawyer knows have adverse interests with intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client; or

5

          (c) represents a client in a matter substantially related to a matter in which the interests of a present or former client are materially adverse, and knowingly uses information relating to the representation of a client with the intent to benefit the lawyer or another, and causes serious or potentially serious injury to a client.

4.32    Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

4.33    Reprimand [i.e., "public censure" under Rule 9(a)(3), W.R.Disc.P.] is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

4.34    Admonition [i.e., "private reprimand" under Rule 9(a)(4), W.R.Disc.P.] is generally appropriate when a lawyer engages in an isolated instance of negligence in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes little or no actual or potential injury to a client.

15.    The parties stipulate, and the Review Panel so finds, that disbarment is the presumptive sanction for Respondent's conduct in fostering and engaging in a sexual relationship with his client, knowing that Respondent's personal interests were adverse to the client's interests in representation, with the potential for injury to the client.

16.    <u>Standard 7.0.</u> The parties stipulate that Respondent's violation of Rule 1.16 (failure to withdraw from representation) implicates ABA Standard 7.0 ("Violations of Other Duties Owed as a Professional"), which states:

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving false or misleading communication about the lawyer or the lawyer's services, improper communication of fields of practice, improper solicitation of professional employment from a prospective client, unreasonable or improper fees, unauthorized practice of law, improper withdrawal from misrepresentation, or failure to report professional misconduct.

7.1    Disbarment is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional with the intent to obtain a benefit for the lawyer or another and causes serious or potentially serious injury to a client, the public or the legal system.

6

7.2 Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.3 Reprimand [i.e., "public censure" under Rule 9(a)(3), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer negligently engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the legal system.

7.4. Admonition [i.e., "private reprimand" under Rule 9(a)(4), Wyo.R.Disc.Proc.] is generally appropriate when a lawyer engages in an isolated instance of negligence that is a violation of a duty owed as a professional, and causes little or no actual or potential injury to a client, the public, or the legal system.

17. The parties stipulate, and the Review Panel so finds, that a public censure is the presumptive discipline for Respondent's conduct in failing to withdraw from the client's representation promptly upon fostering and entering into a sexual relationship with her. The Review Panel notes again its finding that Respondent's was negligent in violating Rule 1.16(a).

18. The Lawyer's Mental State. The preamble to the ABA Standards includes the following discussion regarding mental state:

The mental states used in this model are defined as follows. The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation of a care that a reasonable lawyer would exercise in the situation.

19. The parties stipulate, and the Review Panel so finds, that Respondent's misconduct as set forth above was, at all times and in all respects, intentional.

20. The Potential or Actual Injury Caused by the Lawyer's Misconduct. Under the ABA Standards, "injury" is defined as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from 'serious' injury to 'little or no' injury; a reference to 'injury' alone indicates any level of injury greater

7

than 'little or no' injury." "Potential injury" is defined as "harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."

21.     The parties stipulate, and the Review Panel so finds, that Respondent's misconduct as set forth above had the potential to cause injury to the client and the legal system.

22.     Aggravating and Mitigating Factors.  ABA Standard 9.0, entitled "Aggravation and Mitigation," provides as follows:

9.1     *Generally*
After misconduct has been established, aggravating and mitigating circumstances may be considered in deciding what sanction to impose.

9.2     *Aggravation*
9.21     *Definition.*  Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed.
9.22     *Factors which may be considered in aggravation.*  Aggravating factors include:
        (a) prior disciplinary offenses;
        (b) dishonest or selfish motive;
        (c) a pattern of misconduct;
        (d) multiple offenses;
        (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
        (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
        (g) refusal to acknowledge wrongful nature of conduct;
        (h) vulnerability of the victim;
        (i) substantial experience in the practice of law;
        (j) indifference in making restitution; and
        (k) illegal conduct, including that involving the use of controlled substances.

9.3     *Mitigation*
9.31     *Definition.*  Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed.
9.32     *Factors which may be considered in mitigation.* Mitigating factors include:

8

(a) absence of a prior disciplinary record;

(b) absence of a dishonest or selfish motive;

(c) personal or emotional problems;

(d) timely good faith effort to make restitution or to rectify consequences of misconduct;

(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f) inexperience in the practice of law;

(g) character or reputation;

(h) physical disability;

(i) mental disability or chemical dependency including alcoholism or drug abuse when:

(1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

(2) the chemical dependency or mental disability caused the misconduct;

(3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse; and

(m) remoteness of prior offenses.

23. In Respondent's case, the parties agree, and the Review Panel so finds, that aggravating factors include: (1) a prior disciplinary offense (a 2019 private reprimand); (2) dishonest or selfish motive; and (3) vulnerability of the victim.

24. The parties agree, and the Review Panel so finds, that mitigating factors include Respondent's profession of remorse and acceptance of responsibility for his conduct.

25. The Review Panel finds it appropriate to give considerable weight to Respondent's sustained and effective course of treatment and recovery for his alcohol dependency as well as his PTSD as mitigating factors weighing in favor of a lengthy suspension as opposed to disbarment as the appropriate discipline.

9

26.     The parties stipulate, and the Review Panel so finds, in consideration of the foregoing factors, that an eighteen-month suspension is the appropriate sanction for the conduct to which Respondent has conditionally admitted.

27.     Concurrently herewith, the parties submitted a stipulation for a three-year suspension in WSB No. 2021-078, which the Review Panel approves. The parties stipulate, and the Review Panel recommends, that in the event the Review Panel's report and recommendation regarding both stipulations are adopted by the Wyoming Supreme Court, the suspensions be served concurrently and not consecutively.

28.     If the Court adopts the Review Panel's recommendation and issues an Order of Suspension in accordance herewith, the parties have agreed to the following press release:

> The Wyoming Supreme Court issued an order suspending Cheyenne attorney Cody M. Jerabek from the practice of law for eighteen months, effective _____.
>
> The order of suspension stemmed from Jerabek's conduct in entering into a consensual sexual relationship with a client; failing to withdraw from the client's representation promptly upon entering into the sexual relationship; and advising the client to conceal evidence of the relationship. Jerabek agreed to the suspension, which was presented to a review panel of the Wyoming State Bar's Board of Professional Responsibility. In consideration of a number of aggravating and mitigating factors, including Jerabek's sustained and successful efforts at recovery from alcohol use disorder and other psychological problems, the review panel approved the stipulated eighteen-month suspension and submitted a report and recommendation to that effect to the Wyoming Supreme Court. In adopting the review panel's recommendation, the Court ordered Jerabek to pay an administrative fee in the amount of $750.00 and costs of $50.00 to the Wyoming State Bar.

## RECOMMENDATION

In consideration of the foregoing findings and conclusions, the Review Panel recommends as follows:

1.      That Respondent be suspended for eighteen months for violations of Rules 1.7(a), 1.8(j) and 1.16(a), W.R.Prof.Cond.

10

2.      That, upon issuance of the order of suspension, the foregoing press release may be issued.

3.      That Respondent be required to pay an administrative fee of $750.00 and costs of $50.00 to the Wyoming State Bar within 10 days of such order.

Dated this ____ day of October, 2022.

John A. Masterson, Chair
Review Panel of the Board of Professional
Responsibility
Wyoming State Bar

11